USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ____1/9/2026____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUSSELL J. BAKER, ET AL.

                    Plaintiffs,

        -against-

JOSEPH PETERS, ET AL.,

                    Defendants.

7:25 CV 2609 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Individuals Russell J. Baker and Wade St. Germain (together, "Individual Plaintiffs") and business entities Beaverkill Studio, Inc., R.J. Baker Corp., Exit 98 Corp., d/b/a/ Cabernet Frank's (together, "Entity Plaintiffs"; together with the Individual Plaintiffs, "Plaintiffs") bring this action against Defendants Blake Starner, Michael Schiff, Victor Zayas, Michael Barrett, Rachel Bitjeman, Onyxx Clarke, and the Sullivan County Sheriff's Office (collectively, "County Defendants") and against Joseph Peters and Joseph Peters Jr. (together, "Peters Defendants"[1]), pursuant to 42 U.S.C. § 1983, asserting violations of their due process rights under the Fourth and Fourteenth Amendments by County Defendants and violations of section 3604(a) of the Fair Housing Act ("FHA") by the Peters Defendants. The Complaint alleges that their neighbors, the Peters Defendants, repeatedly harassed Plaintiffs on the basis of their sexual orientation and that County Defendants deprived Plaintiffs of their constitutional rights under the Fourteenth and Fourth Amendments by (a) withholding proper and expected protections from the Peters Defendants, based on their sexual orientation and (b) false arrest and excessive force. (*See generally* Complaint, ECF No. 1.)

---

[1] The Peters Defendants appear *pro se* in this action.

1

The County Defendants and the Peters Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). The County Defendants further moved to dismiss the Entity Plaintiffs' due process claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) ("Rule 12(b)(1)") for lack of standing. For the following reasons, the County Defendants' and the Peters Defendants' motions to dismiss are GRANTED.

## FACTUAL BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of resolving the motions filed by the County Defendants and the Peters Defendants.

The Individual Plaintiffs are a married same-sex couple. (Compl. ¶ 1.) Plaintiffs and the Peters Defendants own neighboring properties in Parksville, Sullivan County, New York. Plaintiffs use their properties as both a residence and place of business, including a production studio, Beaverkill Studio, and a restaurant, Cabernet Frank's (Exit 98 Corp.). (*Id.* ¶¶ 17–19.) The Peters Defendants' property benefits from a ten-foot right-of-way across one of Plaintiffs' properties, the scope and limitations of which were adjudicated by the Sullivan County Supreme Court. (*Id.* ¶¶ 22–23.) Plaintiffs allege that the Peters Defendants have misused the right-of-way as a staging area for anti-gay slurs and threats. (*Id.*)

According to the Complaint, beginning in 2017, the Peters Defendants engaged in repeated verbal and physical threats and harassment of the Individual Plaintiffs based on their sexual orientation. The Complaint details numerous incidents and exchanges between the parties that occurred intermittently over several years and continued through 2024, when Plaintiffs were allegedly forced to abandon their home and businesses due to the ongoing harassment. (*Id.* ¶¶ 20–150.) During this period, police were summoned on numerous occasions, orders of protection ("OOPs") were issued, and Defendant Joseph Peters was charged and, in some instances convicted,

of multiple criminal offenses, including criminal contempt, harassment, disorderly conduct, and stalking. (*Id.*)

Plaintiffs further allege that between 2017 and 2024, the County Defendants repeatedly failed to enforce active OOPs, instead issuing verbal warnings to the Peters Defendants, crediting the Peters Defendants' accounts over Plaintiffs' in response to reported OOP violations, and otherwise responding inadequately to Plaintiffs' complaints of harassment. (*Id.* ¶¶ 47–50, 61–67, 80–88, 90–92, 96–108, 110–118, 128–131, 135–144, 148–150, 156–157.)

On October 14, 2024, the Peters Defendants filed a complaint alleging that Plaintiff Baker violated an OOP by throwing a bucket of water on Defendant Joseph Peters. (*Id.* ¶ 158.) Plaintiffs allege that this incident never occurred, and that the complaint was false. Nevertheless, Deputy Sheriffs Clarke and Bitjeman arrested Plaintiff Baker. (*Id.* ¶ 159.) Plaintiffs allege that Clarke forced Baker face-down onto the ground with a knee pressed against his back, while Bitjeman used her baton against Baker's back. (*Id.* ¶¶ 163–165.)

Based on these allegations, Plaintiffs assert that the County Defendants violated their rights under the Fourth and Fourteenth Amendments and that the Peters Defendants violated their rights under the FHA.

### PROCEDURAL HISTORY

Plaintiffs commenced this action on March 31, 2025 with the filing of the Complaint. (ECF No. 1.) The Peters Defendants moved to dismiss the FHA claims pursuant to Rule 12(b)(6) and each filed a memorandum of law ("Peters MoL", ECF No. 39; "Peters Jr. MoL", ECF No. 40). County Defendants also moved to dismiss Plaintiffs' due process claims pursuant to Rules 12(b)(6) and 12(b)(1) and filed a memorandum of law. ("County MoL", ECF No. 51.) Plaintiffs filed an

opposition to Defendants' motions to dismiss ("Pl. Opp.", ECF No. 53) and County Defendants filed a reply ("County Reply", ECF No. 52).

## LEGAL STANDARDS

### A. Rule 12(b)(1)

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [they] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the

elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### C.  42 U.S.C. § 1983 Claims

Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

**DISCUSSION**

Plaintiffs assert claims for violations of their due process rights under the Fourth and Fourteenth Amendments and for violations of the FHA. The Court addresses the County Defendants' and the Peters Defendants' motions to dismiss in turn.

**A.  County Defendants' Motion to Dismiss**

Plaintiffs seek damages from the County Defendants for alleged violations of their Fourteenth Amendment due process rights. The County Defendants argue that Plaintiffs fail to state a claim under § 1983; that Plaintiffs' Fourteenth Amendment claims are time-barred and barred by qualified immunity; that Plaintiffs fail to allege facts establishing the personal involvement of Sheriff Michael Schiff or the Sullivan County Sheriff's Office in the alleged violations; and that the Entity Plaintiffs lack standing.[2] The Court agrees.

**1.  Fourteenth Amendment Due Process Claim Under State-Created Danger**

The Supreme Court has repeatedly held that "as a general matter, a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). The Second Circuit recognizes two narrow exceptions to this rule: the "special relationship" exception and the "state-created danger" exception. *Tufaro v. City of New York*, No. 12-CV-7505 (AJN), 2014 WL 4290631, at *2–3 (S.D.N.Y. Aug. 28, 2014). "If a plaintiff's claim satisfies one or both of these theories, the plaintiff must also show that the defendant's conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' to sustain a substantive due process claim." *Spiezio v. Martinez*, 653 F. Supp. 3d 8, 29 (N.D.N.Y. 2023) (quoting *Golian v. N.Y. City Admin. for Children Servs.*, 282 F. Supp. 3d 718, 728 (S.D.N.Y.

---

[2] As the County Defendants challenged only Plaintiffs' Fourteenth Amendment claims in their memorandum of law, the Court does not address Plaintiffs' Fourth Amendment claims in this Opinion.

6

2017)). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity.'" *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (quoting *Smith v. Half Hollow Hills Cent. School Dist.,* 298 F.3d 168, 173 (2d Cir. 2002)).

Plaintiffs assert their Fourteenth Amendment claims only under the state-created danger exception. That exception "requires…affirmative, rather than passive, conduct on the part of a government actor that 'communicates, explicitly or implicitly, official sanction of private violence.'" *Tufaro v. City of New York*, No. 12-CV-7505 AJN, 2014 WL 4290631, at *3 (S.D.N.Y. Aug. 28, 2014) (citing *Okin v. Vill. of Cornwall–on–Hudson Police Dep't*, 577 F.3d 415, 429 (2d Cir. 2009)).

Several Second Circuit cases illustrate the type of conduct sufficient to support application of the state-created danger exception. In *Okin*, the complaint alleged that police officers repeatedly ignored a woman's complaints of domestic abuse by her partner, who was personally friendly with the officers. 577 F.3d at 429–30. The abuser admitted to police that he had physically assaulted his partner, yet officers failed to arrest him or prepare domestic incident reports. *Id.* In upholding plaintiff's due process claim under the state-created danger exception, the Second Circuit emphasized the well-known and acute risks inherent in domestic violence situations and concluded that the officers' "deliberate indifference"—combined with their repeated inaction in the face of explicit admissions of abuse—amounted to conscience-shocking conduct that implicitly sanctioned the abuse. *Id.* at 431–32.

Similarly, in *Pearce v. Estate of Longo*, the court upheld the plaintiff's substantive due process claims under the state-created danger exception, finding that a police officer's supervisors were "well-aware of the ongoing abuse and threatening behavior" he exhibited before ultimately

7

stabbing his wife to death and committing suicide. 766 F. Supp. 2d 367, 373, 375 (N.D.N.Y. 2011), aff'd in part, rev'd in part sub nom. *Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012). In *Pearce*, the complaint alleged that the victim had made multiple formal reports and repeatedly contacted the police department to express her concerns, yet her husband's supervisors discouraged her from filing reports or seeking an OOP and failed to discipline or suspend him, confiscate his firearms, or evaluate his mental condition. *Id.* The Court noted that "[t]he dangers of domestic violence are well-established and should be known by the law enforcement defendants," who had ample time to respond to the victim's repeated complaints appropriately. *Id.* The court further concluded that the defendants' conduct was conscience-shocking and, as in *Okin*, "had implicitly encouraged the offender's behavior and, thereby, increased the risk of danger to the victim in violation of the Due Process Clause." *Id.*

In *Dwares v. City of New York*, the complaint alleged, among other things, that one of the defendant officers confirmed to a reporter that police officers had told a group of racist private actors known as "skinheads" that "unless they got completely out of control the police would neither interfere with their assaults nor arrest them." 985 F.2d 94, 97 (2d Cir. 1993). These prior assurances were borne out when plaintiff was violently assaulted by members of the skinheads during a protest in the presence of police officers who failed to intervene, resulting in injury. *Id.* In reversing the lower court, the Second Circuit held that, unlike *DeShaney*, the factual allegations in *Dwares* "went well beyond the allegations that the defendant officers merely stood by and did nothing." *Id.* at 99. Rather, the complaint alleged that the officers "conspired with the skinheads" and provided "prior assurances" of noninterference, thereby increasing the likelihood that the skinheads would assault protestors. *Id.* As the court explained, "[s]uch a prearranged official

8

sanction of privately inflicted injury would surely have violated the victim's rights under the Due Process Clause." *Id.*

While these cases are not exhaustive, they illustrate the type of affirmative, conscience-shocking conduct required to state a claim under the state-created danger exception. The inquiry is inherently fact-specific and turns on whether state actors affirmatively increased a plaintiff's risk of harm. In opposing dismissal, Plaintiffs cited to several cases—*Pena v. DePrisco*, *Okin*, *Lombardi*, *Coleman v. County of Suffolk*, and *Eubanks v. Hansell*—without meaningfully comparing the allegations in those cases to the allegations here. Of those cases, only *Okin* and *Pena* sustained claims under the state-created danger exception. *Okin* is distinguishable for the reasons discussed above, and *Pena* is likewise inapposite. *Pena* involved a police officer with a known history of alcohol abuse who struck and killed three pedestrians after a 12-hour drinking binge with fellow officers and supervisors. The complaint alleged that throughout his tenure, the officer was "never questioned, disciplined, or counseled regarding his alcohol use," and, instead, routinely drank alcohol with other officers at or near the police precinct house, openly and with supervisors' knowledge. *Pena v. DePrisco*, 432 F. 3d 98, 103 (2d Cir. 2005). The complaint further alleged that fellow officers "hindered the investigation" of the incident by failing to administer sobriety tests at the scene, delaying testing of the officer's blood alcohol level for several hours, sending his blood to an unauthorized laboratory rather than the medical examiner, failing to develop photographs taken at the scene, losing or destroying inculpatory evidence, intimidating witnesses, and suppressing the results of an alcohol sensor test. *Pena*, 432 F. 3d at 103–104. Distinguishing between "conduct that is 'passive' as in *DeShaney* and that which is 'affirmative' as in *Dwares*," the Second Circuit rejected plaintiffs' state-created danger theory based on allegations that certain officers "stood by and did nothing" to prevent the intoxicated officer's

conduct, but upheld it on the basis that other officers encouraged the intoxicated officer "to drink to excess and drive in that condition." *Id.* at 110–111.

Here, the Complaint does not allege comparable affirmative conduct by the County Defendants. Plaintiffs do not allege that the County Defendants collaborated with the Peters Defendants, sanctioned their harassment, provided assurances of noninterference, obstructed investigations, ignored harassment while witnessing it, or otherwise took actions that increased Plaintiffs' risk of harm. Nor do the allegations support conduct that is "outrageous and egregious" enough to shock the conscience. *Lombardi*, 485 F.3d at 81. To the contrary, the Complaint alleges that County Defendants responded to multiple complaints, made arrests, and obtained several OOPs. (Compl. ¶¶ 29–36, 42–46, 47–48, 54–56, 61–64, 71, 82, 84–85, 90–92, 114–15.)

Plaintiffs' contention that the County Defendants should have taken additional measures does not, without more, create liability under the state-created danger doctrine. It is well settled that allegations that officials "stood by and did nothing," or should have done more, are insufficient absent conscience-shocking affirmative conduct. *Pena*, 432 F.3d at 110.

Accordingly, County Defendants' conduct does not rise to the level required to shock the conscience and Plaintiffs fail to state a substantive due process claim under the state-created danger exception.

### 2. Statute of Limitations

The County Defendants further argue that, even if the state-created danger exception applied, Plaintiffs' Fourteenth Amendment due process claim is barred by the applicable statute of limitations. The Court agrees.

This action was commenced on March 31, 2025. The vast majority of the incidents alleged in the Complaint occurred between 2017 and 2020. See Compl. ¶¶ 20–127. In New York, § 1983

claims are subject to a three-year statute of limitations pursuant to CPLR 214(5). Accordingly, any claims accruing prior to March 31, 2022 are time-barred.

Plaintiffs contend that the continuing violation doctrine renders their § 1983 claims timely. That doctrine permits otherwise untimely claims to proceed where they arise from a discriminatory policy or practice and are continuous in time with at least one timely act. *Plumey v. New York State*, 389 F. Supp. 2d 491, 498 (S.D.N.Y. 2005). Courts in this Circuit, however, disfavor application of the continuing violation doctrine and reserve it for "compelling circumstances." *Id.*

Here, the allegations in the Complaint do not warrant application of the continuing violation doctrine. First, Plaintiffs do not plausibly allege that the County Defendants acted pursuant to a specific discriminatory policy or practice. "A simple declaration that defendant's conduct violated the ultimate legal standard (e.g., it was 'because of sex' or 'severe and pervasive') does not suffice." *Id.* (internal quotations omitted). Second, even assuming Plaintiffs had adequately alleged a policy or practice, the untimely incidents—those accruing prior to March 31, 2022—are not sufficiently continuous in time with any timely conduct. Plaintiffs argue that from 2017 through 2024, the County Defendants engaged in a "sustained pattern of inaction" in response to complaints regarding the Peters Defendants' harassment. Pl. Opp. at 17. The Complaint, however, alleges multiple instances during this period in which County Defendants responded to Plaintiffs' complaints, issued OOPs, and made arrests. *See* Compl. ¶¶ 29–36, 42–46, 47–48, 54–56, 61–64, 71, 82, 84–85, 90–92, 114–15. Such allegations undermine any claim of the type of uninterrupted, ongoing conduct required to invoke the continuing violation doctrine. *Cf. Fitzgerald v. Henderson*, 251 F.3d 345, 363 (2d Cir. 2001) (finding a continuing violation where there was a "constant stream" of "day-to-day" abuse with "no interruption"). Finally, Plaintiffs do not allege any basis for equitable tolling of the statute of limitations.

Accordingly, Plaintiffs' substantive due process claims pursuant to § 1983 is time-barred.

### 3. Qualified Immunity

The County Defendants further argue that they are entitled to qualified immunity. Qualified immunity shields government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Saucier v. Katz*, the Supreme Court articulated a two-step framework for resolving qualified immunity claims: courts were first required to determine whether the facts alleged establish a violation of a constitutional right and, if so, then determine whether that right was clearly established at the time of the challenged conduct. 533 U.S. 194, 201 (2001). In *Pearson*, however, the Court made clear that this sequence was no longer mandatory and that courts may exercise discretion in deciding which prong of the analysis to address first. 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier,* we conclude that…it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Here, given the multi-year timeframe of the alleged conduct, the Court exercised its discretion to first determine whether Plaintiffs plausibly alleged a substantive due process violation under the state-created danger doctrine. Having concluded that they did not, the Court further finds that the Complaint points to no "clearly established" law or constitutional right of which County Defendants ran afoul based on the alleged conduct.

Plaintiffs argue that County Defendants are not entitled to qualified immunity by attempting to draw comparisons to *Okin*, but as discussed *supra*, *Okin* —which involved allegations that police officers implicitly sanctioned domestic abuse by repeatedly ignoring a victim's complaints while maintaining a friendly relationship with the abuser—is fundamentally distinguishable from the allegations here. Pl. Opp. at 22-24. Without more, Plaintiffs therefore fail to show that County Defendants' conduct violated clearly established law.

Accordingly, County Defendants are entitled to qualified immunity.

### 4. Personal Involvement of Defendants Sheriff Michael Schiff and the Sullivan County Sheriff's Office

The County Defendants argue that the Complaint fails to allege facts establishing the personal involvement of Sheriff Michael Schiff or the Sullivan County Sheriff's Office in the alleged constitutional violations. The Court agrees.

As clarified by the Supreme Court in *Ashcroft v. Iqbal*, "vicarious liability is inapplicable to § 1983 suits." 556 U.S. 662, 676 (2009). Accordingly, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" and "a plaintiff must plead that each Government-official Defendant, through the official's own individual actions, has violated the Constitution." *Id.* (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691 (1978). Further, under *Monell*, "[i]n order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91).

With respect to Defendant Sheriff Michael Schiff, the Complaint fails to allege facts demonstrating his direct and personal involvement in the alleged constitutional deprivations. Defendant Schiff is mentioned only once in connection with a specific action: paragraph 56 alleges that, on September 5, 2017, he called Sergeant Baker to inform him that the Sheriff's Office was appointing Sergeant Starner as a liaison in Plaintiffs' ongoing matter with the Peters Defendants. Compl. ¶ 56. As a general matter, such action clearly does not violate Plaintiffs' rights, but even if it did, the allegation predates March 31, 2022, and is therefore barred by the statute of limitations. Plaintiffs' remaining references to Defendant Schiff merely allege that he took "no action" with regards to Plaintiffs' complaints of the Peters Defendants' harassment. As discussed *supra*, such inaction, without conscience-shocking conduct, fails to establish liability for a § 1983 claim under the state-created danger doctrine. Compl. ¶¶ 67, 103, 108, 149, 151.

Similarly, the Complaint fails to allege facts demonstrating the Sullivan County Sheriff's Office's direct and personal involvement in any constitutional deprivation. Plaintiffs do not assert a *Monell* claim for municipal liability; even if they had, they would fail under the applicable standard because they do not allege that the County Defendants acted pursuant to any official policy. *See White v. Westchester Cnty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) ("A plaintiff may satisfy the policy, custom[,] or practice requirement by alleging one of the following: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or

14

supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.").

Accordingly, because Plaintiffs fail to allege any personal involvement by Defendant Schiff or to assert a *Monell* claim, the claims against Michael Schiff and the Sullivan County Sheriff's Office are dismissed.

### 5. Standing of Entity Plaintiffs

The County Defendants also argue that Plaintiffs lack standing to pursue § 1983 substantive due process claims under the state-created danger doctrine. The Court agrees.

Although corporations are "persons" within the meaning of the Fourteenth Amendment and have Article III standing, every circuit to recognize the state-created danger doctrine has limited its application to situations involving risks of physical or emotional harm to individuals.[3] As the County Defendants correctly observe, the cases relied upon by both parties uniformly involve allegations that the state failed to protect individual persons—not business entities—from private violence. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009); *Matican v. City of New York*, 524 F.3d 151 (2d Cir. 2008); *Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005); *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993); *Eubanks v. Hansell*, No. 23-CV-1234, 2024 WL 1308672 (E.D.N.Y. Mar. 26, 2024); *Tufaro v. City of New York*, No. 12-CV-7505, 2014 WL 4290631 (S.D.N.Y. Aug. 28, 2014).

Because a corporate entity cannot suffer the type of physical or emotional injury that *DeShaney* and its progeny seek to remedy through the state-created danger doctrine, the Entity

---

[3] Since *DeShaney*, all circuit courts of appeals, except for the Fifth Circuit, have adopted the state-created danger doctrine.

Plaintiffs lack standing to assert such a claim. Accordingly, the Entity Plaintiffs' substantive due process claims under the state-created danger exception are dismissed with prejudice.

## B. Peters Defendants' Motions to Dismiss

Plaintiffs seek damages from the Peters Defendants for alleged violations of § 3604(a) of the FHA. Each of the Peters Defendants moved to dismiss the FHA claim pursuant to Rule 12(b)(6), arguing that the claim is time-barred, that Plaintiffs fail to plausibly allege harassment based on sexual orientation, that the allegations are false or inaccurate, and that the conflict amounts to a "bitter neighbor dispute" rather than actionable harassment based on sex discrimination. *See generally* Peters MoL; Peters Jr. MoL. The Court agrees with respect to the statute of limitations.

### 1. FHA Statute of Limitations

Claims brought under the FHA are subject to a two-year statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A). The statute provides that an aggrieved person must commence a civil action "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." *Id.* The limitations period may be equitably tolled where a plaintiff demonstrates that the defendant concealed the existence of the cause of action and that the plaintiff remained unaware of it until a point within the statutory period. *Grimes v. Fremont Gen. Corp.*, 785 F.Supp.2d 269, 291 (S.D.N.Y. 2011) (citing *Cardiello v. Money Store, Inc.*, No. 00-CV-7332, 2001 WL 604007, at *4 (S.D.N.Y. June 1, 2001)). Tolling of the statute of limitations period may be delayed "until the last discriminatory act in furtherance of it." *Shomo v. City of New N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (citations and punctuation omitted). As with Plaintiffs' Fourteenth Amendment claims, FHA claims may also be extended under the continuing violation

doctrine. *Tejada v. LittleCity Realty LLC*, 308 F.Supp.3d 724, 733 (E.D.N.Y. 2018) (citing *Havens v. Coleman*, 455 U.S. 363, 380 (1982).

Plaintiffs commenced this action on March 31, 2025, asserting FHA claims against the Peters Defendants based on conduct dating back to 2017. As a general matter, the majority of the alleged incidents occurred between 2017 and 2020. *See* Compl. ¶¶ 20–127. The sole allegation from 2021 is that Plaintiffs, through counsel, advised the Peters Defendants to cease trespassing on Plaintiffs' easement. *Id.* ¶ 128. The 2022 allegations include claims that Defendant Peters followed Plaintiff St. Germain in May 2022; that the Peters Defendants filed a baseless noise complaint against Cabernet Frank's on August 13, 2022; and that beginning on October 5, 2022, the Peters Defendants violated a state-court settlement agreement by trespassing, playing loud music, making homophobic remarks, taunting Plaintiffs, and spreading defamatory statements. *Id.* ¶¶ 129, 131, 135–37.

The remaining allegations that potentially fall within the limitations period concern conduct in 2023 and 2024, including alleged violations of an order of protection through repeated entries onto Plaintiffs' property, harassment from the easement, blasting music, leaving debris and cat litter on Plaintiffs' property, throwing a board against Beaverkill Studio, and urinating on Plaintiffs' property. *Id.* ¶¶ 138–139, 141–143, 156, 172.

Any FHA claims accruing prior to March 31, 2023 are time-barred. Plaintiffs have not alleged that the Peters Defendants concealed the existence of the cause of action or identified any other basis for equitable tolling. Nor does the continuing violation doctrine apply to the allegations as asserted. That doctrine permits otherwise untimely FHA claims to proceed only where they are part of a single, ongoing pattern of discrimination and at least one discriminatory act occurred within the limitations period. Section 3604(a) makes it unlawful to "refuse to sell or rent … or

17

otherwise make unavailable or deny[] a dwelling to any person *because of* [*protected characteristics*]." 42 U.S.C. § 3604(a) (emphasis added). Here, Plaintiffs fail to plausibly allege that the foregoing incidents occurring in 2023 and 2024—i.e., the only conduct within the limitations period—were motivated by discrimination based on sexual orientation. Because the timely allegations do not support a viable FHA claim, they cannot serve as a basis for applying the continuing violation doctrine to revive earlier, time-barred conduct.

Accordingly, even assuming the truth of Plaintiffs' allegations that the Peters Defendants engaged in harassment and other misconduct, the Court must dismiss the FHA claim against the Peters Defendants as time-barred.

## CONCLUSION

For the foregoing reasons, the County Defendants' motion to dismiss is GRANTED, and Plaintiffs' Fourteenth Amendment claims against the County Defendants are dismissed without prejudice, except for those claims asserted on behalf of the Entity Plaintiffs which are dismissed with prejudice. The Peters Defendants' motion to dismiss is GRANTED and Plaintiffs' FHA claims against the Peters Defendants are dismissed without prejudice.

Plaintiffs are granted leave to file an Amended Complaint consistent with this opinion, including to substitute Sullivan County for the Sullivan County Sheriff's Office as requested, on or before February 13, 2026. Should Plaintiff not file an Amended Complaint by this date, Plaintiffs' claims will be dismissed with prejudice. In the event Plaintiffs file an Amended Complaint by February 13, 2026, Defendants are directed to answer, or otherwise respond to, the Amended Complaint within twenty-one (21) days following Plaintiffs' filing of the Amended Complaint.

19

The Clerk of Court is directed to terminate the motions at ECF Nos. 39, 40, and 51.

SO ORDERED.

Dated: January 09, 2026
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.

19